USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09/20/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
CHARLES GILES                                  10 Civ. 7461 (DAB)

    Plaintiff,                             MEMORANDUM AND ORDER

    - against -

NBC UNIVERSAL, INC.,

    Defendant.
------------------------------------X
DEBORAH A. BATTS, United States District Judge.

    Plaintiff Charles Giles ("Giles") brings the above-captioned action against his current employer, Defendant NBC Universal, Inc. ("NBCU"), alleging retaliation for his prior engagement in protected activities, pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e et seq.) and New York State Executive Law (§§ 290 et seq.), and failing to accommodate his reasonable disability request, in accordance with the Americans with Disabilities Act ("ADA") (42 U.S.C. §§ 12111 et seq.). Plaintiff seeks compensatory damages and injunctive relief against Defendant.

    This matter is before the Court on a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed December 21, 2010 by Defendant NBC Universal, Inc. For reasons detailed herein, Defendant's Motion to Dismiss is GRANTED and the Complaint is DISMISSED in its entirety.

1

I. FACTUAL BACKGROUND[1]

At the time the Complaint was filed, Plaintiff Giles was a 51-year-old male resident of Ronkonkoma, New York. (Compl. ¶ 9.) Giles was hired by NBCU as a technician in 1986, and later became a member of the National Association of Broadcast Employees and Technicians ("NABET"). (Compl. ¶¶ 1 & 12.) Giles has a history of chronic kidney stones and suffers from back and neck pains associated with herniated discs. (Compl. ¶ 1.)

In 1996, Giles filed a complaint with the New York State Division of Human Rights alleging racial discrimination. (Compl. ¶ 16.) The matter was settled in 2001 after NBCU agreed that Plaintiff would permanently be classified within a particular paygrade. (Compl. ¶ 17.) In April 2003, Plaintiff filed a complaint with the federal Equal Employment Opportunity Commission ("EEOC"). (Compl. ¶ 18.) In January 2005, the EEOC issued a Right to Sue and Plaintiff filed a civil claim against NBCU in federal court in April 2005; the matter was privately settled in January 2006. (Compl. ¶ 19.)

Giles is an active member of the NABET and in recent years he has been rallying union members and non-union contractors to sign a petition challenging NBCU current hiring practices. (Compl. ¶ 20). Because of his union efforts and past EEOC claims, Plaintiff

---

[1] Since this Motion to Dismiss is pursuant to Fed. R. Civ. P. 12(b)(6), all Plaintiff's allegations are assumed to be true.

alleges NBCU is holding him "to a different standard" from other similarly situated employees. (Compl. ¶ 24.) In 2009, Plaintiff's supervisor told him that another manager, Angela Crayton, had stated: "Giles can never be a supervisor . . . because he had filed complaints in the past." (Compl. ¶ 23.)

Plaintiff also contends that Defendant retaliated against him by assigning him to undesirable positions without considering his kidney condition and by failing to accommodate his disability requests. (Compl. ¶ 31.) Plaintiff alleges that in August 2008, Plaintiff requested a modified work schedule because of his back and neck pains, asking to arrive at work 15 minutes earlier and leave 15 minutes earlier than the regular workday times.[2] (Compl. ¶ 36.) Defendant allowed Plaintiff to leave early only on days he had a medical appointment, and Plaintiff's requests for a permanent shift modification were denied. (Compl. ¶¶ 38, 39 & 41.)

Plaintiff was on medical leave from September 14 - October 20, 2009. (Compl. ¶ ¶ 48 - 49.) He was allowed to return to work at NBCU in March 2010. He was offered a non-supervisory position (the position he currently holds) in the Implementation Shop loading video tapes to re-supply tape machines. (Compl. ¶¶ 54 &

---

[2] Plaintiff requested his work hours to permanently be modified from 7:30 AM - 5:30PM to 7:15AM - 5:15PM so that he may (i) have a greater opportunity to obtain a seat on the train home, (ii) enable him to catch an express train, and (iii) enable him to make the last chiropractor appointment for the day if he experienced severe pain that day. (Compl. ¶ 36.)

55.) The essential duties of this position require Giles to "constantly jump in and out of his chair to load and unload tapes" which makes it "virtually impossible for him to drink the required amounts of water to combat his kidney condition, because he is unable to use the restroom as needed." (Compl. ¶ 56.)

On April 23, 2009, Plaintiff filed a complaint with the New York State Division of Human Rights (cross-filed with the EEOC) alleging retaliation and discrimination. (Compl. ¶ 7.) On June 29, 2010, the EEOC issued a Right to Sue. (Id.) Plaintiff brought this suit in federal court on September 29, 2010. Giles also filed a §8(a)(1) and (3) charge with the National Labor Relations Board ("NLRB") on March 10, 2010. (See Compl., Exhibit B.)

## II. DISCUSSION

A.  Standard for Motion to Dismiss under Rule 12(b)(6)

For a complaint to survive dismissal under Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility," the Supreme Court has explained,

> when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a

4

defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 556-57). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotation marks omitted). "In keeping with these principles,"

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

In ruling on a 12(b)(6) motion, a court may consider the complaint as well as "any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference." Zdenek Marek v. Old Navy (Apparel) Inc., 348 F. Supp.2d 275, 279 (S.D.N.Y. 2004) (citing Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001) (internal quotations omitted)).

B.  Plaintiff's Retaliation Claims

Plaintiff Giles alleges he was retaliated against as a result of two prior protected activities: (i) his involvement with NABET

5

and other union activities in recent years, and (ii) the federal lawsuit that he filed in April 2005. (Compl. ¶¶ 19 - 22).

i. Retaliation Based on His Concerted Union Activities

Giles alleges that NBCU retaliated against him for advocating on behalf of non-NABET union "daily hires," actively rallying staff employees to sign a petition to bring suit against NBCU challenging its practice of hiring these daily hires, and other "concerted union activities." (Compl. ¶ 20). These labor union activities are governed under the §§ 7 and 8 of the National Labor Relations Act. 29 U.S.C. § 157 - 58. The National Labor Relations Board ("NRLB") has exclusive jurisdiction over labor union activities arguably protected by §§7 and 8. San Diego Bldg. Trades Council v. Garmon, U.S. 236, 244 - 45 (1959) (holding that federal and state courts must defer to the "exclusive competence" of the NLRB). Numerous courts have explicitly held that when interpreting any ambiguity in the meaning of § 8(a)(3), courts must defer to the interpretation of the NLRB. E.g., Commc'n Workers v. Beck, 487 U.S. 735, 742 - 43 (1988); N.L.R.B. v. Fermont, a Div. of Dynamics Corps. of America, 928 F.2d 609, 613 - 14 (2d Cir. 1991).

Here, Giles filed a NLRB Section 8(a)(1) and (3) complaint (Compl. Exhibit B). To the extent Plaintiff's retaliation claim

6

is based on his participation in union activities, it is preempted by the NLRA, and thus DISMISSED.

ii. Retaliation Based on 2005 Lawsuit

Giles further alleges he was retaliated against because he filed an April 2005 lawsuit in federal court accusing NBCU of failing to comply with the terms of a 2001 agreement.

To demonstrate a prima facie case of retaliation, a plaintiff must establish: (1) participation in a protected activity; (2) the defendant knew of the protected activity; (3) adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.[3] Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005).

To satisfy the fourth element of a retaliation claim, "[t]he employee must show that retaliation was a substantial reason for the [adverse] employment action." Id. The causal connection between the protected activity and adverse employment action can be established through direct evidence of retaliatory animus or through indirect circumstantial evidence. Sumner v. U.S. Postal Service, 899 F.2d 203, 209 (2d Cir. 1990) (internal citation

---

[3] New York courts apply the same analysis for retaliation claims under state law as in federal employment cases and are subjected to the same standard of proof under Title VII. See Hendler v. Intelecom USA, Inc., 963 F. Supp. 200, 209 - 11 (E.D.N.Y. 1997); see also Pazamickas v. N.Y. State Office of Mental Retardation & Dev. Disabilities, 963 F. Supp. 190, 196 - 97 (N.D.N.Y. 1997).

7

omitted). In cases where there is no direct allegation of retaliatory animus, indirect circumstantial evidence of a temporal relationship must exist. Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001). Indirect circumstantial evidence can be established by showing that the prior protected activity was followed by discriminatory treatment or through evidence of disparate treatment of employees who engage in similar conduct. Sumner, 899 F.2d at 209. While there is no "bright line" rule for cases that rely solely on temporal proximity, the protected activity and alleged discriminatory treatment must be "very close[ly]" associated to support an inference of retaliation. Breeden, 532 U.S. at 273 (rejecting a retaliation claim and finding that 20 months was too long to support an inference of causation).

Here, the first two elements of Plaintiff's retaliation claim--participation in a protected activity and Defendant's knowledge of the protected activity--are not disputed. For the fourth element, Giles must show either direct retaliatory animus or a temporal link between his 2005 federal suit filing and allegedly adverse actions. Breeden, 532 U.S. at 273.

Plaintiff fails to offer evidence of direct retaliatory animus. Plaintiff alleges he was told that an NBC manager Angela Crayton stated: "Giles can never be a supervisor . . . because he had filed complaints in the past." (Compl. ¶ 23.) However,

8

Plaintiff does not allege that Ms. Crayton was ever in a decision-making position over Giles. See Gaffney v. Dep't of Info. Tech. and Telecomm., 536 F.Supp.2d 445, 471 (S.D.N.Y. 2008) (finding that only relevant statements made by relevant managers regarding the allegedly adverse action at issue should be considered to establish causation); see also Martin v. State Univ. of N.Y., 704 F.Supp.2d 202, 230 - 31 (E.D.N.Y. 2010) (finding the alleged display of retaliatory animus by "the very individual who made the decision"). Accordingly, this statement is insufficient to establish causation. See Danzer v. Norden Systems, Inc., 151 F.3d 50, 56 (2d Cir. 1998) ("Stray remarks, even if made by a decision maker, do not constitute sufficient evidence [to support] a case of employment discrimination.").

Where there is no showing of retaliatory animus, proof of causation may be shown indirectly by demonstrating that the protected activity was followed closely by retaliatory actions. Time periods as short as three months have been found to be too long to be considered causally connected, and periods over one year are generally conclusive that no retaliation has taken placed. Gorman-Bakos v. Cornell Co-op Extension of Schenectady County, 252 F.3d 545, 554 (2d Cir. 2001) (citing Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 2007)); Burkybile v. Bd. Of Educ. of Hasting-On-Hudson Union Free Sch. Dist., 411 F.3d 306, 314 (2d Cir. 2005). Here, Giles's first allegation of NBCU's

9

retaliation after his April 2005 federal suit was in October 2007 (Comp. ¶ 27.), two-and-a-half years after his protected activity. Plaintiff alleges a number of retaliatory actions, all spanning from October 2007 to September 2010. However, a temporal lag of two-and-a-half to five years is too long to support an inference of causation. See, e.g., Stroud v. N.Y.C., 374 F.Supp.2d 341, 351 (S.D.N.Y. 2005) (finding the "yawning temporal gap" of almost two years cannot give rise to an inference of causation). Plaintiff has thus failed to allege a causal connection between the 2005 lawsuit and any adverse employment action. The fourth element of his retaliation claim is not satisfied, and the Court need not examine the third element of that claim.

Accordingly, Plaintiff has failed to state sufficiently a claim for retaliation and Defendant's Motion is Dismiss the retaliation claim is GRANTED.

C.  ADA Failure to Accommodate Claim

Giles alleges that NBCU failed to make reasonable accommodations that he requested, as required by the ADA. Specifically, Giles alleges that NBCU violated the ADA by: (i) assigning him his current position loading and unloading videotapes in the Implementation Shop, which he claims to restricts his restroom access, and (ii) denying his request for a modified work schedule. (Compl. ¶¶ 34 - 36, 55 - 57.)

10

In order to demonstrate a prima facie case for reasonable accommodation under the ADA, a plaintiff must establishment that: (1) he is an individual with a disability under the ADA; (2) his employer is covered by the statute and had notice of his disability; (3) he could perform the essential duties of his position with reasonable accommodation; and (4) his employer has refused to make such accommodations. <u>McBride v. BIC Consumer Products Mfg. Co., Inc.</u>, 583 F.3d 92, 97 (2d Cir. 209) (internal citations omitted) (discussing the elements under 42 U.S.C. § 12111(8)). "Disability" is defined by the ADA as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102. The EEOC regulations define "reasonable accommodations" as: "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, the enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii).

i. Need to Urinate Frequently

Plaintiff alleges that NBCU, acting out of retaliation, intentionally assigned him his current position without reasonable accommodation for his kidney condition. (Compl. ¶ 57.) However,

11

"merely having an impairment does not make one disabled for the purposes of the ADA." Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 195 (2002). The impairment must limit a "major life activity." Id. To constitute a disability, "an impairment must not merely affect a major life activity, it must 'substantially limit' that activity." EEOC v. Yellow Freight Sys., Inc., No. 98 Civ. 2270 (THK), 2002 WL 31011859, at *13 (S.D.N.Y. Sept. 9, 2002).

Plaintiff has not alleged facts to show his kidney condition is a disability. He fails to allege that it "substantially" limits his ability to engage in major life activities. Simply put, the need to urinate frequently is not a disability recognized by the courts. See Lewis v. Hill, No. 97 Civ. 3213 (DAB), 2005 WL 292748, at *4 (S.D.N.Y. Feb. 8, 2005) (finding that plaintiff's prostate condition, which caused him to urinate frequently, was not "so severe as to constitute a substantial limitation" and was therefore not "disabled" within the meaning of the ADA.). Plaintiff has not satisfied the first element of his failure to accommodate claim and to the extent that claim is based on urinary frequency, it is DISMISSED.

ii. Permanent Work Schedule Modification

Plaintiff alleges NBCU violated the ADA by refusing to approve his proposed 2008 modified work schedule. Defendants do

12

not dispute the first two elements of the claim: (1) that Plaintiff's back condition constitutes a disability, and (2) that his employer had notice of the disability. To satisfy the third element, Plaintiff must show that he could perform the essential duties of his position with reasonable accommodations.

An employer is not required to make accommodations that are "'primarily for the [individual's] personal benefit,' such as an 'adjustment or modification [that] assists the individual throughout his or her daily activities, on and off the job,' or to provide 'any amenity or convenience that is not job-related.'" Lyons v. Legal Aid Soc., 68 F.3d 1512, 1516 (2d Cir. 1995). Instead, the reasonable accommodation requirement is meant to ensure employers consider possible modifications of jobs that would allow an employee with a disability to perform them. Here, however, allowing Giles to arrive and leave fifteen minutes earlier will not arguably make him a better employee in the work environment. Giles' requested accommodation was for his personal benefit and NBCU had no obligation to "provide any amenity or convenience that is not job-related." Id.

Plaintiff fails to allege facts to satisfy the third element of his reasonable accommodation claim, and to the extent that claim is based on NBCU's refusal to grant him a modified work schedule, it is DISMISSED.

D. Leave to Replead

When a complaint has been dismissed, permission to amend it "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, a court may dismiss without leave to amend when amendment would be "futile", or would not survive a motion to dismiss. Oneida Indian Nation of New York v. City of Sherrill, 337 F.3d 139, 168 (2d Cir. 2003) (internal citations omitted), rev'd on other grounds sub nom. City of Sherrill v. Oneida Indian Nation of New York, 544 U.S. 197, 125 S.Ct. 1478, 161 L.Ed.2d 386 (2005). On the record before the Court, it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Because an amended complaint would not be able to survive a motion to dismiss, Plaintiff's Complaint is hereby dismissed without leave to replead.

III. CONCLUSION

Plaintiff's Complaint, even when construed under the favorable 12(b)(6) standards, fails to state facts sufficient to claim that Defendant retaliated against him because of prior protected activity or failed to accommodate reasonably his requests as required by the ADA.

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED. Plaintiff's Complaint is hereby DISMISSED in its

entirety, without leave to replead. The Clerk of the Court is directed to close the docket in this case.

SO ORDERED.

DATED:   September 20, 2011

New York, New York

*Deborah A. Batts*
Deborah A. Batts
United States District Judge

15